**PILLAR LAW GROUP, APLC**
Art Kalantar, Esq. (SBN 229626)
Henrik Mosesi, Esq. (SBN 189672)
Anthony H. Lupu, Esq. (SBN 226168)
150 South Rodeo Drive, Suite 260
Beverly Hills, California 90212
Tel: (310) 999-0000
Fax: (888) 667-5482

Attorneys for Plaintiff MALIBU MEDIA, LLC,
a California limited liability company.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC, a California limited liability company.<br><br>Plaintiff<br><br>v.<br><br>LIPSCOMB, EISENBERG & BAKER, PL, a Florida professional limited liability company; MICHAEL K. LIPSCOMB, an individual; and DOES 1 to 100, inclusive,<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT**<br><br>1. Professional Negligence<br>2. Breach of Fiduciary Duty<br>3. Accounting<br>4. Violation of Business & Professions Code §§ 17200 et seq. |

Plaintiff MALIBU MEDIA, LLC, a California limited liability company (hereinafter "MM") sues Defendants LIPSCOMB, EISENBERG & BAKER, PL, a Florida professional limited liability company, MICHAEL K. LIPSCOMB, an individual; and DOES 1 to 100, inclusive (collectively "Defendants," unless the context indicates otherwise) and alleges as follows:

**PARTIES**

1. Plaintiff is and was at all times mentioned herein, a California limited liability company with its principal place of business located in the county of Los Angeles, state of California.

2. Plaintiff is informed and believes that Defendant LIPSCOMB, EISENBERG & BAKER, PL, (hereinafter "LEB") is a Florida professional limited liability company, organized in and existing pursuant to the laws of the state of Florida, with its principal place of business located at 2 South Biscayne Blvd., Ste. 3800 Miami, Florida 33131.

3. Plaintiff is informed and believes that Defendant MICHAEL K. LIPSCOMB, an individual, (hereinafter "Lipscomb") is and was at all times mentioned herein a member of LEB and a resident of the city of Miami, state of Florida.

4. Agency Allegations: Defendants, and each of them, at all times mentioned herein, were the agents of every other Defendant, acting within the scope of said agency, such that each and every Defendant herein is liable and accountable for the acts of each other Defendant.

5. Alter Ego Allegations: Plaintiffs are informed and believe and thereon allege that Lipscomb used LEB as a mere shell, instrumentality, and/or conduit of each other, and commingled assets by and between himself and LEB to such an extent that any individuality or separateness of LEB ceased.

**JURISDICTION AND VENUE**

6. Pursuant to 28 U.S.C. § 1331(a)(2), "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of a State and citizens or subjects of a foreign state." Plaintiffs, and each of them, are organized and transact business under the laws of the state of California, and upon information and belief, Defendants, and each of them, are organized and/or transact business under the laws of the state of Florida and reside in the state of Florida. The matter is controversy exceeds, exclusive of interest and costs, the sum specified in 28 U.S.C. §1332.

7. Defendants are subject to personal jurisdiction in this District because they engaged in knowing and repeated telephone calls, text messages or emails with MM to enter into the initial

agreement and to give updates on pending matters. Defendants initially contacted MM by telephone, email and text messages in order to solicit MM to engage Lipscomb and LEB as its copyright enforcement counsel. On a number of occasions, Defendants wired funds to MM in this District. These wired funds purportedly represented MM's portion of the copyright damages collected by Defendants. On at least two occasions, Lipscomb travelled to this District in order to meet MM to discuss pending copyright matters and other business relating to pending cases. On numerous occasions, Lipscomb emailed what he considered to be accounting information regarding settlement proceeds to MM.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

8. MM is an adult film production company. In or around late 2011, LEB via its agents contacted MM in California to offer its services as general counsel and lead litigation counsel with respect to the enforcement of MM's copyrights.

9. Essentially, the copyright enforcement program consisted of MM filing suit in federal court against individuals who illegally downloaded MM's films on the BitTorrent file distribution network. The amount of copyright infringement of MM's works was rampant; thus, the amount of suits filed in any given month numbered in the hundreds, and at any given time, there were hundreds of cases pending in federal courts throughout the United States.

10. LEB was the "general counsel" with respect to the entire copyright enforcement program, and in certain litigation cases LEB would sometimes act as "lead counsel" for individual cases filed.

11. Upon information and belief, at the inception of their representation, LEB never provided MM with a written and signed retainer agreement setting forth the standards upon which LEB would provide legal services to MM and bill for those services, including whether LEB's fee would be on a contingency, flat fee, or hourly basis, and which contained provisions for charges and apportionment of settlement amounts and costs.

12. Notwithstanding the lack of a written and signed retainer agreement, upon information and belief, MM would receive a fixed percentage of the total settlement amounts flowing from settlements. Upon information and belief, at some point the fixed percentage number

changed and LEB also began to charge MM for the filing costs for new cases.

13. Upon information and belief, on or around September 29, 2015, Lipscomb advised MM that because of the copyright program's operating costs, LEB wanted to get litigation financing and "encumber the trust account." Lipscomb also indicated that he wanted to "catch up and capitalize" the copyright enforcement program by encumbering the campaign's future income stream. Upon further information and belief, in or around Fall 2015, Lipscomb advised MM that LEB wanted to "accrue money" for the copyright enforcement program, which Lipscomb suggested would occur for a period of 4-6 months.

14. Upon information and belief, LEB never provided MM with any signed, written agreement explaining or specifying the terms of the "encumbering" of the future income stream, or "accrual" of money process, and the effect the "accrual" would have on MM's settlement payouts.

15. At some point thereafter, with the exception of approximately $100,000, LEB ceased to tender funds to MM from the copyright enforcement program.

16. MM requested that LEB provide financial documents or financial statements evidencing the financial status of the copyright enforcement program, and amounts due to MM. In response, on or about February 19, 2016, LEB sent MM copies of the 2015 trust account bank statements. MM advised LEB that the bank statements were alone insufficient, as MM was unable to determine what the numbers represented.

17. On February 19, 2016, LEB provided via email an estimated breakdown of monthly costs and expenses, but promised "detailed cash flow statements." LEB advised that they were preparing cash flow statements for January 2016 and for "one month" for 2015, and would produce it to MM.

18. Thereafter, on or about February 23, 2016, MM authorized Pillar Law Group, APLC ("Pillar") to examine and investigate all matters concerning the federal copyright enforcement litigations.

19. LEB and Pillar exchanged multiple emails. In one email dated April 5, 2016, Lipscomb indicated that "Malibu is winding its copyright campaign down because it is no longer profitable." On April 12, 2016, Lipscomb indicated in order for LEB to "wind down" the campaign,

an "engagement agreement" would need to be signed. Lipscomb also indicated that if the engagement agreement was not signed, Pillar and Lipscomb would "need to formulate a plan through which LEB withdraws and new counsel stips [sic] in."

20. In another email dated April 12, 2016, Lipscomb indicated that the type of litigation involved in the campaign was "incredibly sophisticated and nuanced" and also warned that "if the cases (or the steps in a wind down process) are mismanaged… Malibu will lose cases or be sanctioned by courts or both." He warned in another email dated April 12, 2016 that "[t]here is enormous potential liability to [MM] if this is not managed correctly." Lipscomb also indicated in an email dated April 12, 2016 that, as far an accounting was concerned, it could provide Profit & Loss statements from "Sept forward" and that he "can represent and warrant in an engagement agreement in advance of an accounting or P&L's that LEB has never paid itself anywhere close to a reasonable hourly rate for its services."

21. On April 12, 2016, Lipscomb forwarded to MM a proposed agreement, which purported to govern the terms of the "wind down." In the proposed agreement, LEB indicated that it would produce a monthly P&L statement for the campaign each month for the preceding month," and "would provide P&L statements for September 2015 through April 2016 by the end of April 2016." The proposed agreement also contained provisions for fee charges and apportionment of settlement amounts and costs. The proposed agreement also contained a "Release" which stated that "Each party to this Agreement… hereby releases the other party … from all claims, in law or in equity, the factual foundation for which occurred, in whole or in part, prior to the Effective Date of this Agreement." MM did not sign the agreement.

22. On that same day, April 12, 2016, Pillar reiterated MM's request for an accounting.

23. On April 13, 2016, Lipscomb again promised "monthly P&Ls which LEB's office manager will send to you as she completes them…" On April 15, 2016, Lipscomb indicated that LEB would provide bank statements with backup invoices to show payments made for operational costs, and indicated that LEB's office manager will begin sending financial information shortly. Lipscomb also indicated that "the current circumstances presented a conflict" which needed to be resolved or that LEB would withdraw as counsel for MM.

24. On April 15, 2016, Pillar, as it had previously advised, indicated that it was "not substituting in any of the pending litigation matters and requested that [LEB] continue representing [MM] in good faith." Pillar indicated that the only thing being requested is an accounting of all the funds received and spent on behalf of MM and advised that "there are hundreds of cases currently pending in various federal jurisdiction and [LEB's] withdrawal will cause significant financial loss to MM."

25. From April 15, 2016 to April 17, 2016, LEB provided "supported" bank statements for November 2015 through to March 2016.

26. On Sunday, April 17, 2016, Lipscomb sent Colette Pelissier Field an email, entitled "New Malibu Deal," which indicated that it wanted MM to agree to a new deal regarding LEB's services. Under the deal, LEB and Lipscomb would provide certain "transition" services, including training for 6 months. Included in the deal was a demand that "LEB be released from everything to date with the only exception being malpractice forward" and that Pillar's "demands are dropped."

27. On April 18, 2016, Lipscomb sent an email to all local counsel, indicating that LEB had "terminated its representation" of MM effective April 18, 2016.

28. On April 18, 2016, LEB and/or Lipscomb filed a motion to withdraw as counsel for MM in a case entitled *Malibu Media, LLC v. Jesse Raleigh*, which was pending in the U.S. District Court, Western District of Michigan. The court granted the motion on April 29, 2016, and ordered that MM procure new counsel in Michigan within twenty-one days.

29. MM was not able to procure new counsel in the shortened time frame. The court, in an order dated May 24, 2016, dismissed the action. Defendant in the Michigan action thereafter filed on June 7, 2016 a Post-Judgment Motion for Costs and Attorneys' Fees, and seeks a total of $158,685.00. The motion is pending.

30. On June 10, 2016, LEB and Lipscomb filed a lawsuit against MM and Pillar Law Group, APLC in Florida state court. In the lawsuit, LEB and Lipscomb revealed attorney-client privileged and confidential matters to the court and the public.

///

///

6

COMPLAINT

## FIRST CAUSE OF ACTION

## PROFESSIONAL NEGLIGENCE

### (Against LEB and Lipscomb, and Does 1-100)

31. Plaintiff incorporates by this reference all the other allegations set forth in ¶ 1 through 30, inclusive.

32. At all relevant times mentioned herein, Defendants, and each of them, owed a duty of care to act at all times in good faith and in MM's best interest, and had a duty, amongst other things, to perform the services for which they were retained with reasonable care and skill, to act in MM's highest and best interest at all times, and to not expose MM to any unnecessary risk or peril, all in accordance with relevant legal standards of care. Defendants, and each of them, breached the standard of care as follows:

   a. LEB and/or Lipscomb were professionally negligent in the case *Malibu Media, LLC v. Jesse Raleigh* because LEB and Lipscomb had a duty to ensure that MM had successor counsel prior to filing its withdrawal motion (especially given the history of the case, as noted by the court), and were aware or should have been aware, that MM would be unable to secure new counsel during the shortened time frame after withdrawal. As a result, MM is now subject to a pending Motion for Costs and Attorneys' Fees in the amount of $158,685.00.

   b. LEB and/or Lipscomb were also professionally negligent in that they represented MM in a mediation with various third-parties in the summer of 2015. When LEB and/or Lipscomb represented MM in the mediation (and prior to that mediation), Defendants, knew or should have known that MM's interests were adverse to LEB and/or Lipscomb's interest, and should have advised MM to seek independent counsel. As a result of LEB and/or Lipscomb's representation, advice and failure to advise MM to seek independent counsel, MM was improperly named as a settling party, and became obligated to pay settlement funds to a third-party.

c. LEB and/or Lipscomb were also professionally negligent in their representation of MM in a case entitled *Malibu Media LLC v. John Doe*, filed in a United States District Court.  In that case, LEB and/or Lipscomb failed to properly disclose two of MM's experts as providing expert testimony under Federal Rule 26(a)(2)(A).  Based thereon, the court struck the expert testimony, granted a dispositive motion, and entered judgment in favor of the defendant.  MM was liable for attorney's fees, and settled defendant's attorney's fees and costs claim for a sum that is the subject of a confidential settlement agreement.

d. LEB and/or Lipscomb were also professionally negligent in their representation of MM in that they failed to provide a written, signed retainer and other documents at the inception of their legal representation, as required under Florida bar rules, as detailed herein, including but not limited to, Rule 4-1.5(f); Rule 4-1.5(f)(4)(C) and Rule 4-1.5(f)(5), and failed to secure a written and signed retainer agreement outlining the method by which Defendants' fee were to be determined; what percentage or percentages were to accrue to Defendants in event of settlement, trial or appeal; and reflecting other expenses to be deducted from any recovery.

e. At the time LEB and/or Lipscomb withdrew from representing MM, LEB and Lipscomb were aware that the copyright enforcement program was "incredibly sophisticated and nuanced"; that "if the cases (or the steps in a wind down process) are mismanaged…Malibu will lose cases or be sanctioned by courts or both"; and that there would be "enormous potential liability to [MM] if this is not managed correctly."  As a result of LEB and/or Lipscomb's sudden withdrawal, MM has been, and will be, foreseeably damaged in that new cases were unable to be filed for a period of time, which caused MM to be unable to protect its copyrights.

      f.   Upon further information and belief, LEB and/or Lipscomb also improperly charged MM for filing fees reflecting the cost of cases filed.

33. As a direct and proximate result of the aforesaid negligence, MM has suffered, and will continue to suffer, harm in an amount according to proof at trial, but not less than the minimum jurisdictional amount of the court.

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

**(Against LEB and Lipscomb, and Does 1-100)**

34. Plaintiff incorporates by this reference all the other allegations set forth in ¶ 1 through 30, inclusive.

35. At all relevant times mentioned herein, Defendants, and each of them, owed a fiduciary duty to act at all times in good faith and in MM's best interest, and had a duty, amongst other things, to perform the services for which they were retained with reasonable care and skill, to act in MM's highest and best interest at all times, and to not expose MM to any unnecessary risk or peril, all in accordance with relevant legal standards of care. Defendants, and each of them, breached their fiduciary duty to MM as follow:

      a.   Further, LEB and/or Lipscomb breached its fiduciary duty to MM in the case *Malibu Media, LLC v. Jesse Raleigh* because LEB and/or Lipscomb had a duty to ensure that MM had successor counsel prior to filing its withdrawal motion (especially given the history of the case), and were aware or should have been aware, that MM would be unable to secure new counsel during a shortened time frame after withdrawal. As a result, MM is now subject to a pending Motion for Costs and Attorneys' Fees in the amount of $158,685.00.

      b.   LEB and/or Lipscomb also breached their fiduciary duty to MM in that they represented MM in a mediation with various third-parties in the summer of 2015. When LEB and/or Lipscomb represented MM in the mediation (and prior to that mediation), Defendants, knew or should have known that MM's interests were adverse to LEB and/or Lipscomb's interest, and should have

        advised MM to seek independent counsel. As a result of LEB and/or Lipscomb's representation, advice and failure to advise MM to seek independent counsel, MM was improperly named as a settling party, and became obligated to pay settlement funds to a third-party.

    c. LEB and/or Lipscomb also breached their fiduciary duty to MM in their representation of MM in a case entitled *Malibu Media LLC v. John Doe*, filed in a United States District Court. In that case, LEB and/or Lipscomb failed to properly disclose two of MM's experts as providing expert testimony under Federal Rule 26(a)(2)(A). Based thereon, the court struck the expert testimony, granted a dispositive motion, and entered judgment in favor of the defendant. MM was liable for attorney's fees, and settled defendant's attorney's fees and costs claim for a sum that is the subject of a confidential settlement agreement.

    d. At the time LEB and/or Lipscomb withdrew from representing MM, LEB and/or Lipscomb were aware that the copyright enforcement program was "incredibly sophisticated and nuanced"; that "if the cases (or the steps in a wind down process) are mismanaged… Malibu will lose cases or be sanctioned by courts or both"; and that there would be "enormous potential liability to [MM] if this is not managed correctly." As a result of LEB and/or Lipscomb's sudden withdrawal, MM has been, and will be, foreseeably damaged in that new cases were unable to be filed for a period of time, which caused MM to be unable to protect its copyrights.

36. In addition, under Florida bar Rule 4-1.5(f), contingent fee agreements are required to be in writing; shall state the method by which the fee is to be determined; and set forth other requirements.[1] Further, Rule 4-1.5(f)(4)(C) sets forth additional duties required of a lawyer as to

---

[1] Rule 4-1.5(f) states: "Contingent Fees. As to contingent fees: (1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subdivision (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in

contingency agreements, including providing the client with a copy of the statement of client's rights.[2] Further, Rule 4-1.5(f)(5) requires that a lawyer prepare a closing statement upon the conclusion of the representation, and that such statement shall be retained and available for inspection by the client.[3]

37. LEB and/or Lipscomb breached its fiduciary duty, including the duties and requirements reflected in Rule 4-1.5(f)(5), and any other applicable rule or law, by i) failing to provide MM with a written and signed retainer agreement, setting forth the contingency agreement or any other fee agreement by and between LEB and MM; ii) failing to provide MM with a statement of client's rights; and iii) failing to provide a closing statement reflecting an itemization of all costs and expenses at the conclusion of each case.

38. LEB and/or Lipscomb breached their fiduciary duty in their representation of MM in that they failed to secure a written and signed retainer agreement outlining the method by which Defendants' fee were to be determined; what percentage or percentages were to accrue to Defendants in event of settlement, trial or appeal; and reflecting other expenses to be deducted from

---

the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

[2] Rules 4-1.5 (f)(4)(C) states: "Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client's rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client's file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5)."

[3] Rules 4-1.5 (f)(5) states: "In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency."

11
COMPLAINT

any recovery.

39. LEB and/or Lipscomb also breached its fiduciary duty to MM by failing to provide MM with a written and signed retainer agreement, reflecting any variation or modification of the parties' agreement regarding dispersal of funds or costs and expenses.

40. LEB and/or Lipscomb also breached its fiduciary duty to MM by charging an unreasonable or unconscionable fee for services rendered.

41. LEB and/or Lipscomb also breached its fiduciary duty to MM by improperly charging MM for filing fees reflecting the cost of cases filed.

42. Further, LEB and/or Lipscomb had a fiduciary duty to maintain detailed monthly cash flow statements, Profit & Loss Statements, and provide any and all financial statements and documents to MM upon request. Alternatively, LEB and/or Lipscomb had a fiduciary duty to advise MM that it was not preparing such financial statements, and to advise MM to seek independent professional accounting services to monitor the financial aspects of the enforcement program.

43. Upon information and belief, during 2012 to August or September 2015, although tendering funds to MM, LEB did not provide for each and every month full, complete and detailed monthly cash flow and Profit & Loss statements, with all supporting statements and documents.

44. Further, when LEB and/or Lipscomb advised MM in the fall of 2015, that because of operating costs, LEB wanted to get litigation financing, "encumber" the trust account and the campaign's future income stream and/or "accrue money," LEB and/or Lipscomb still failed to provide their client with detailed monthly cash flow statements, Profit & Loss Statements, and provide any and all financial statements by which MM could evaluate that course of conduct.

45. In addition, upon information and belief, LEB and/or Lipscomb never provided MM with any signed, written agreement explaining or specifying the terms of the "encumbering" of the future income stream, or "accrual" process, and the effect the "accrual" would have on MM's settlement payouts. Also, LEB and/or Lipscomb never advised MM to seek independent counsel or other professionals to advise MM whether such a course of action was in MM's best interests, as opposed to the interests of LEB and/or Lipscomb.

46. Last, when MM demanded an accounting, LEB and/or Lipscomb breached their

12

1 fiduciary duties to MM by demanding that MM execute an "engagement agreement" (with a release of liability clause) prior to LEB and/or Lipscomb's continued representation, and "in advance of an accounting and P&Ls."

47. On or about June 10, 2016, LEB and/or Lipscomb filed a complaint in the superior court of the state of Florida against MM and Pillar Law Group, APLC wherein Defendants revealed attorney-client privileged and confidential information to the Court and the general public for no reason but to retaliate against MM for their repeated requests for accounting.

48. As a direct and proximate result of the aforesaid breach of fiduciary duty, MM has suffered, and will continue to suffer, harm in an amount according to proof at trial, including but not limited to punitive damages, and no less than the minimum jurisdictional amount of the court.

## THIRD CAUSE OF ACTION

## ACCOUNTING

**(Against LEB and Lipscomb and Does 1-100)**

49. Plaintiffs incorporate by this reference all the other allegations set forth in ¶ 1 through 30, inclusive.

50. As a result of the aforementioned allegations, Defendants, and each of them, have received money, a portion of which is due to MM, as previously alleged.

51. The amount of money due from Defendants, and each of them, to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of all funds received and costs and expenses paid pursuant to the enforcement program from 2012 to the present.

52. Plaintiff has demanded an accounting of the aforementioned transactions, but Defendants, and each of them, have failed and refused, and continues to fail and refuse, to render such an accounting, as detailed herein.

53. Wherefore it is requested that the Court order an accounting of all funds received, and costs and expenses paid, and all other financial transactions related to the copyright enforcement program from 2012 to the present, as detailed herein.

///

///

# FOURTH CAUSE OF ACTION

## VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200 ET SEQ.

### (Against LEB and Lipscomb and Does 1-100)

54. Plaintiffs incorporate by this reference all the other allegations set forth in ¶ 1 through 30, inclusive.

55. The actions of LEB and Lipscomb, as detailed herein, constitute unfair, deceptive or unlawful business practices, within the meaning of Business and Professions Code §§ 17200 et seq. This includes, but is not limited to:

   a. Failed to provide a written, signed retainer and other documents at the inception of their legal representation, as required under Florida bar rules, as detailed herein, including but not limited to, Rule 4-1.5(f); Rule 4-1.5(f)(4)(C) and Rule 4-1.5(f)(5), and failed to secure a written and signed retainer agreement outlining the method by which Defendants' fee were to be determined; what percentage or percentages were to accrue to Defendants in event of settlement, trial or appeal; and reflecting other expenses to be deducted from any recovery.

   b. Failed to provide MM with a written and signed retainer agreement, reflecting any variation or modification of the parties' agreement regarding dispersal of funds and costs and expenses;

   c. Charged an unreasonable or unconscionable fee for services rendered;

   d. Failed to maintain detailed monthly cash flow statements, Profit & Loss Statements, and provide any and all financial statements and documents to MM upon request;

   e. Failed to advise MM to seek independent professional accounting services to monitor the financial aspects of the enforcement program;

   f. Represented MM in a mediation with various third-parties in the summer of 2015, when LEB and/or LEB knew or should have known that MM's interests were adverse to LEB and/or Lipscomb's interest;

      g. Demanded that MM execute an "engagement agreement" (with a release of liability clause) prior to LEB and/or Lipscomb's continued representation, and "in advance of an accounting and P&Ls";

      h. Withdrew from representing MM when LEB and/or Lipscomb were aware or should have been aware that liability would foreseeably result;

      i. Improperly charging MM for filing fees reflecting the cost of cases filed;

      j. Filed a complaint in the superior court of the state of Florida against MM and Pillar Law Group, APLC wherein Defendants revealed attorney-client privileged and confidential information to the Court and the general public for no reason but to retaliate against MM for their repeated requests for accounting.

56. Plaintiff is informed and believes, and thereon alleges, that Plaintiff and the general public are prejudiced by Defendant's unfair trade practices.

57. As a direct and proximate result of the unfair business practices of LEB and Lipscomb, Plaintiff is entitled to equitable and injunctive relief, including full restitution, disgorgement, and/or specific performance of all amounts unlawfully withheld from Plaintiff as a result of the business acts and practices described herein, and enjoining Defendants to cease and desist from engaging in the practices described herein.

## PRAYER FOR RELIEF

On the First Cause of Action for Professional Negligence:

    a. Damages in an amount to be proven at trial, but not less than the jurisdictional minimum of the Court;

    b. Costs of suit;

    c. Pre and Post-Judgment interest;

    d. For such other and further relief and the Court deems just and proper.

On the Second Cause of Action for Breach of Fiduciary Duty:

    e. Damages in an amount to be proven at trial, but not less than the jurisdictional minimum of the Court;

1        f. Costs of suit;

2        g. Pre and Post-Judgment interest;

3        h. Punitive damages;

4        i. For such other and further relief and the Court deems just and proper.

5    On the Third Cause of Action for an Accounting:

6        j. For an accounting between Plaintiff and Defendants;

7        k. For the amount found to be to be due from Defendants to Plaintiff as a result of the accounting;

9        l. Pre and Post-Judgment interest;

10       m. Costs of Suit;

11       n. For such other and further relief and the Court deems just and proper.

12    On the Fourth Cause of Action for Violation of Business & Professions Code §§ 17200 et seq.

14       o. For an order enjoining Defendants to cease and desist from engaging in the practices described herein;

16       p. For an order of full restitution, disgorgement, and/or specific performance of all amounts unlawfully withheld from Plaintiff as a result of the business acts and practices described herein;

19       q. Pre and Post-Judgment interest;

20       r. Costs of Suit;

21       s. For such other and further relief and the Court deems just and proper.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

| | | |
|---|---|---|
| DATED:  June 28, 2016 | **PILLAR LAW GROUP** | |
| | *A Professional Law Corporation* | |

By:  /s/ Henrik Mosesi
Henrik Mosesi, Esq.
Art Kalantar, Esq.
Anthony H. Lupu, Esq.
Attorneys for Plaintiff MALIBU MEDIA, LLC,
a California limited liability company